UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

UNITED STATES OF AMERICA )
)
v. ) Case No. 5:15-cr-00003-01
)
CHRISTOPHER PAPPANO, )
)
Defendant. )

**OPINION AND ORDER RE: DEFENDANT'S MOTION TO SUPPRESS ITEMS SEIZED FROM HIS RESIDENCE AND THE GARAGE OF ANOTHER RESIDENCE**
**(Doc. 13)**

Defendant Christopher Pappano has moved to suppress evidence gathered during the execution of a search warrant issued by a Vermont state court judge which led to his arrest for unlawful possession of a firearm. (Doc. 13.) Pappano contends that the warrant was not supported by probable cause. The court heard arguments from the parties on April 28, 2015.

**I.     Facts**

On December 26, 2014, Vermont State Police Corporal George Rodriguez applied to the Franklin County Superior Court for a warrant to search defendant's residence, garage and vehicles. In his supporting affidavit, Rodriguez asserted the following facts:

On December 24, 2014, Rodriguez assisted with the investigation of an armed robbery at a country store in Montgomery, Vermont. Police arrested the suspected robber, Shawn Plante, and brought him to the state police barracks in St. Albans, where Plante waived his *Miranda* rights and agreed to speak with Rodriguez.

Police had found a gun in Plante's truck which had been reported as stolen. Plante told Rodriguez that he had purchased the gun from an associate and did not know it was stolen. Plante then told Rodriguez that he had information regarding other stolen firearms but could not tell Rodriguez because he feared retribution from the person involved. He told Rodriguez that he lived across the street from this person. He then silently mouthed the name "Pappano" to Corporal Rodriguez. Rodriguez was familiar with Christopher Pappano and his wife, Korena,

1

who lived at 15 Lamoille Terrace in Milton, Vermont. Rodriguez told Plante that he knew who Pappano was.

Plante stated that Pappano had been attempting to sell firearms stolen from Charles Senesac. Plante said that he had discussed guns with Pappano during the weeks prior to Thanksgiving and had mentioned to Pappano that he should see the M4 carbine that Senesac had in the safe at his home in Isle La Motte. Plante was familiar with Senesac's home because Senesac was dating Plante's mother.

Plante told Rodriguez that on the Friday after Thanksgiving (November 28, 2014), Pappano had instructed Plante to drive him to Senesac's residence. Pappano and Plante drove around the building and pulled up to a sliding door. Pappano entered the residence through an unlocked window and Plante followed. They took several guns as well as some deer mounts, scuba diving gear, clothes, and fish finders.

Plante said that he and Pappano stored the stolen firearms in the garage attached to 10 Lamoille Terrace, a house occupied by an associate of Pappano's, Mark Granger. Plante said that Pappano managed the property and controlled access to the garage at 10 Lamoille Terrace. He did not allow Granger to use the garage. Plante said Pappano's motorcycle and toolbox were in the garage along with "a[n] M4, a shotgun, a couple of .22 caliber rifles." (Doc. 13-3 at 9.) Plante said that he hadn't seen the double-barrel 16-gauge shotgun and a 9mm pistol taken from Senesac's house since he stored the firearms in the garage at 10 Lamoille Terrace. Plante completed a sworn written statement describing the burglary, which Rodriguez included in the affidavit.

Plante also told Rodriguez that Pappano used and sold cocaine. He said that Pappano hid his cocaine and scales in a videocassette recorder in his basement. Plante stated that he owed money to Pappano for cocaine and had robbed the country store in Montgomery because Pappano had demanded repayment.

Plante told Rodriguez that Pappano carried a .45 caliber pistol on his person, usually in the front of his waistband or in his jacket. Pappano also owned a .22 caliber pistol, a .357 magnum pistol, and numerous swords and knives.

After speaking to Plante, Rodriguez performed a check of Pappano's Vermont criminal history. Rodriguez learned that Pappano had three prior felony convictions for forgery, aggravated assault, and a drug-related conspiracy.

2

Rodriguez also located a report filed by the Grand Isle County sheriff on December 2 in response to Charles Senesac's complaint that his home had been burglarized. Rodriguez included a copy of the sheriff's report in his affidavit. Senesac had told the sheriff that he had not been home since November 26. He reported that firearms were missing from his safe, to which only Plante and a few other family members knew the combination. He said that several shotguns and handguns and an M4 carbine were missing, as well as a small black safe containing the serial numbers to the stolen guns. Senesac reported that numerous pieces of hunting equipment including deer and duck mounts as well as clothing and scuba diving equipment had also been taken. Senesac suspected that Plante or one of his friends had committed the burglary because they had stolen things from him in the past. The sheriff reported that he observed vehicle marks on Senesac's lawn where the thieves had driven to the back of the residence and backed up to a sliding glass door.

Based on the above information, Rodriguez requested a no-knock warrant to search the residence at 15 Lamoille Terrace and the garage attached to 10 Lamoille Terrace, as well as any vehicles at the residence in Milton, which he believed would provide evidence of the burglary at Senesac's residence. Judge Alison Arms issued the search warrant. On December 29, police executed the warrant. Pappano was arrested after a loaded .45 caliber semiautomatic pistol was discovered in his residence. (Doc. 18 at 3.)

## II.   Analysis

Pappano argues that the warrant was not supported by probable cause because Corporal Rodriguez's affidavit was based solely on Plante's uncorroborated statements. More specifically, Pappano argues that although Plante's statement that he broke into the Senesac home and stole firearms and other sports equipment may be corroborated by Senesac's independent report to the police about the break-in, there is no similar corroboration for Plante's accusation that Pappano took part in the burglary. From Pappano's perspective, Plante could have identified anyone as his accomplice, and the judge had no basis on which to determine that this information was sufficiently reliable to support probable cause for a search of the Pappano home. Pappano further argues that the police could not rely in good faith on the warrant because the affidavit lacked any indicia of probable cause, and because the judge who signed the search

warrant "acted as a rubber stamp for the police and thus failed to perform her neutral and detached function as a judicial officer." (Doc. 13-1 at 12.)

The Fourth Amendment prohibits "unreasonable searches and seizures" and requires that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Probable cause to support a search warrant exists where the totality of the circumstances set forth in the supporting affidavit—including the credibility and knowledge of any informants—demonstrates that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The Supreme Court has described this as a "flexible, common-sense standard" that deals not in "hard certainties, but with probabilities." *Id.* at 239. For this reason, a court reviewing a challenged warrant "must accord considerable deference to the probable cause determination of the issuing magistrate." *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007).

That being said, an affidavit in support of a search warrant must provide the judge with sufficient information from which he or she can determine whether probable cause exists. *Id.* at 239. An affidavit containing only a conclusory statement that the affiants "have received reliable information from a credible person" causing them to believe that contraband will be found on certain premises is inadequate. *Aguilar v. Texas*, 378 U.S. 108, 109 (1964); *see also Nathanson v. United States*, 290 U.S. 41, 44 (1933). On the other hand, where an informant's statements along with other information provide a "substantial basis" for concluding that the search warrant will uncover evidence of criminal activity, the probable cause determination will be upheld. *United States v. Rowell*, 903 F.2d 899, 902 (2d Cir. 1990) (quoting *Gates*, 462 U.S. at 236). "The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable." *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993).

In this case, the search warrant affidavit would be insufficient to establish probable cause without Plante's statements linking Pappano to the Senesac burglary and other criminal activity. Thus, the court must examine the totality of the circumstances, including evidence of Plante's reliability and veracity, to determine whether probable cause existed.

Plante was not a "professional informant[] whose reliability might be suspect." *Rowell*, 903 F.2d at 903. Nor was he an anonymous informant whose credibility was unverifiable. *Cf. United States v. Walker*, 7 F.3d 26, 30 (2d Cir. 1993) (explaining that, in contrast to face-to-face informant, "anonymous tips generally fail to demonstrate the informant's basis of knowledge or

veracity sufficient to provide" reasonable suspicion or probable cause for search or seizure). Although Plante did not have a proven track record of providing reliable information to police, "past performance is not the only way to show veracity." *United States v. Elmore*, 482 F.3d 172, 180 (2d Cir. 2007). As the Second Circuit has explained:

> In assessing the veracity of an informant's statements, it is improper to discount the information provided simply because the informant has no proven record of truthfulness or accuracy. There is, in particular, no need to show past reliability when the informant is in fact a participant in the very crime at issue.

*United States v. Gagnon*, 373 F.3d 230, 236 (2d Cir. 2004) (quotations, citations and alterations omitted). Like the informant in *Gagnon*, Plante admitted to participating in the crime that he accused defendant of committing. *Id.* at 237. This established the basis for his knowledge and rendered it unnecessary to prove his past reliability in providing information to police. Plante also admitted to purchasing cocaine from Pappano. Because these statements were against Plante's penal interest, they tend to support Plante's truthfulness. *Rowell*, 903 F.2d at 903.

While the Second Circuit has cautioned that in general, "a criminal informer is less reliable than an innocent bystander with no apparent motive to falsify," *Gagnon*, 373 F.3d at 236 (quotation omitted), in this case Plante's reliability was supported by several other factors. First, he delivered his information to the police in person. "[A] face-to-face informant must, as a general matter, be thought more reliable than an anonymous telephone tipster, for the former runs the greater risk that he may be held accountable if his information proves false." *United States v. Salazar*, 945 F.2d 47, 50-51 (2d Cir. 1991).

Plante also described the way the burglary was carried out and the items taken from the residence with some detail. Several of the items he mentioned were unusual and distinctive, such as an M4 carbine and scuba diving gear. He gave a detailed description of where the stolen items were likely to be found. "'A detailed eye-witness report of a crime is self-corroborating; it supplies its own indicia of reliability.'" *United States v. Smith*, 9 F.3d 1007, 1013 (2d Cir. 1993) (quoting *United States v. Elliott*, 893 F.2d 220, 223 (9th Cir. 1990)). Plante's statements were corroborated by independent evidence. His description of how the burglary was carried out and the items taken matched Senesac's statements to the sheriff. He also mentioned at least one detail about Pappano that was independently corroborated by Corporal Rodriguez: the fact that Pappano had three prior felony convictions.

Pappano concedes for the purposes of this motion that Plante's description of the method of burglary and the firearms taken matched the sheriff's report, but argues that there was no independent support for Plante's assertions that Pappano was involved in any of these criminal activities. It is not necessary, however, for police to corroborate every single statement made by an informant. "Even where an informant has no proven record, if an informant's declaration is corroborated in material respects, the entire account may be credited, including parts without corroboration." *Wagner*, 989 F.2d at 73. Because Plante's description of how the burglary at the Senesac residence was carried out and what items were taken proved to be reliable, it was reasonable for Judge Arms to credit Plante's statements regarding the items in Pappano's possession and their likely locations. *United States v. Clark*, 638 F.3d 89, 98 (2d Cir. 2011) ("Partial corroboration of an informant is a circumstance that, on totality review, may allow a judicial officer to credit the informant's whole account.").

The totality of the circumstances supported the judge's finding of probable cause. Thus, the remainder of defendant's arguments are without merit, and his motion to suppress the evidence gathered as a result of the warrant must be denied.

### III.    Conclusion

Defendant's motion to suppress (Doc. 13) is DENIED.

Dated at Rutland, in the District of Vermont, this 4th day of May, 2015.

_____
Geoffrey W. Crawford, Judge
United States District Court